```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

Richard Sprano

    v.                                       Civil No. 18-cv-355-JD
                                             Opinion No. 2018 DNH 256

Nancy A. Berryhill,
Acting Commissioner,
Social Security Administration


O R D E R

Richard Sprano seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of Social Security that denied his application for disability insurance benefits and supplemental security income. In support, Sprano contends that the Administrative Law Judge ("ALJ") erred in weighing the medical opinions, which caused an erroneous conclusion that he was not disabled. The Acting Commissioner moves to affirm. Sprano filed a reply, and the Acting Commissioner filed a surreply to address the arguments raised there. See LR 9.1(d).

## Standard of Review

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276

F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings if they are supported by substantial evidence. § 405(g). Substantial evidence is "more than a scintilla of evidence" but less than a preponderance. Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). The court must affirm the ALJ's findings, even if the record could support a different conclusion, when "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (internal quotation marks omitted); accord Purdy, 887 F.3d at 13.

## Background[1]

On March 31, 2016, Richard Sprano filed applications for social security benefits under Title II and Title XVI, alleging an onset of disability on February 3, 2010.[2] He was forty-two years old when he filed his applications. Sprano was treated at Charlestown Family Medicine by PA-C Uptegrove for back pain and diabetes from January of 2016 to January of 2017.

---

[1] The parties did not provide a joint statement of material facts. Sprano provided no statement of facts but included some procedural history in his memorandum. The Acting Commissioner provided only a very abbreviated factual statement.

[2] The onset date was discussed at the administrative hearing and amended to March 31, 2016.

2

Dr. Thomas H. Gassert, M.D., saw Sprano in consultation on referral from PA-C Uptegrove on August 10, 2016. Dr. Gassert noted that Sprano seemed uncomfortable due to back pain. He found that Sprano could hold twenty pounds at shoulder height, his gait and stance were normal, all other leg and arm joints were normal, no signs of radiculopathy, and he could heel and toe walk with modest back pain. Dr. Gassert referred Sprano for a residual functional capacity assessment.

In October of 2016, Karen Huyck, M.D., who practices occupational medicine, did residual functional capacity testing of Sprano as a consultative physician. Dr. Huyck had a follow up meeting with Sprano on January 30, 2017, when she provided the results of her earlier examination.

Dr. Huyck found that Sprano had impairment in his tolerance for standing, pace, walking, and lifting. She also noted that he had completed school only through ninth grade and had failed the pretest for GED courses. She also found that he "gave nearly full levels of physical effort" during her testing.

Dr. Huyck found that Sprano could sit and stand for thirty minutes each. His walking test showed that he maintained a consistent speed for six minutes and achieved 55% of the distance expected for his age and cardiovascular condition. He was able to lift up to forty-three pounds occasionally up to shoulder height and could carry up to forty-three pounds. He

scored in the fifth percentile in a manipulation test. Dr. Huyck further found that "although he may have a sedentary work capacity, he does not have the sitting tolerance or the literacy skills to be able to do a sedentary job." Based on Sprano's reports to her about falling, she also found he was "at significant fall risk."

Dr. Stuart Glassman, M.D., who practices with Granite State Physiatry PLLC, did a consultative examination of Sprano on May 5, 2017. Dr. Glassman reviewed Sprano's medical records and Dr. Huyck's functional capacity assessment. Based on the records and his examination, Dr. Glassman completed a "Medical Source Statement of Ability to Do Work-related Activities (Physical)" for New Hampshire Disability Determination Services.

Dr. Glassman found that Sprano could occasionally lift and carry up to fifty pounds, could frequently lift and carry up to twenty pounds, and could continuously lift and carry up to ten pounds. He wrote that, because of his spinal stenosis and back pain, Sprano could sit for fifteen minutes at a time for a total of three hours, stand for twenty minutes at a time for a total of four hours, and walk for five minutes at a time for a total of one hour. He found that Sprano was limited to occasional reaching overhead, frequent reaching in all other directions, and had no limitations in handling, fingering, feeling, and pushing and pulling. His use of foot controls was limited to

4

frequently.  Other postural activities were limited to frequently.  Dr. Glassman found that Sprano could do all of the listed activities, such as shop, travel, and walk on uneven surfaces.

A hearing was held before an ALJ on June 6, 2017.  Sprano was represented by counsel, appeared, and testified at the hearing.  A vocational expert also appeared and testified.

Sprano explained that he stopped working because of back pain.  The ALJ reviewed Dr. Glassman's findings with Sprano, and she interpreted Dr. Glassman's limitations as to the time he could sit and stand as a need for an option to sit or stand.  The ALJ also reviewed Dr. Huyck's findings.  Sprano said that his spine doctor told him not to work, but his counsel denied having a medical record to support Sprano's assertion.  Sprano's attorney and the ALJ asked him about his medical treatment for his back, his pain, and his daily activities.

The ALJ posed a hypothetical question to the vocational expert based on Dr. Glassman's residual functional capacity assessment.  She described a person who could work at the medium exertional capacity with an option to sit or stand while working, limited standing and walking to five hours during the day, doing each for about half of the time, and limited sitting to about three hours.  Reaching and postural activities were limited to occasionally.

5

In response, the vocational expert said that such a person would not be able to do Sprano's past work. She explained that with the sit/stand option, the person would be limited to work at the light exertional level. With those restrictions, the person could work as a storage facility rental clerk, or as an inspector or hand packager. The vocational expert said that there were no sedentary jobs with a sit/stand option.

Sprano's attorney questioned the vocational expert about the limitations she considered. Specifically, the attorney asked whether someone "who is limited to three hours . . . to half standing in a workshift" could do the jobs the vocational expert identified. Doc. 9-2 at 64. The vocational expert confirmed that the identified jobs allowed a sit/stand option.

The ALJ issued her decision on August 2, 2017, finding that Sprano was not disabled. In support, the ALJ found that Sprano had severe impairments due to lumbar spinal stenosis, degenerative disc disease, residual effects following shoulder surgery, and obesity but that those impairments did not meet or equal any listed impairment.

The ALJ gave great weight to the functional assessment done by Dr. Glassman and little weight to the assessment done by Dr. Huyck. The ALJ explained that Dr. Huyck's opinion was not consistent with the rest of the medical record because she limited Sprano's ability to walk based on his own report of poor

6

balance and falls, which were not documented in his treatment records. The ALJ also faulted Dr. Huyck's assessment that Sprano's literacy skills would preclude him from working when that was outside of her expertise.

The ALJ credited Dr. Glassman's assessment because his limitations were consistent with the rest of Sprano's treatment record and Sprano's own report of his abilities. Relying on Dr. Glassman's assessment, the ALJ found that Sprano had the residual functional capacity to perform medium work with the limitation that he could spend about half a work day (four hours) standing, three hours sitting, and one hour walking. She limited Sprano to occasionally doing postural activities and frequently reaching.

Based on that assessment and the vocational expert's opinion, the ALJ found that Sprano was not able to return to his past work. The ALJ found that Sprano could do the jobs that the vocational expert identified because those jobs could be done either standing or sitting, would not require more than half of the time standing, and would not require more than one hour of walking during the workday. As a result, the ALJ found that Sprano was not disabled. The Appeals Council denied Sprano's request for review.

Discussion

Sprano contends that the decision must be reversed because the ALJ improperly weighed the residual functional assessments provided by Dr. Huyck and Dr. Glassman.  In his reply, Sprano contends that the ALJ assessed a different functional capacity than Dr. Glassman provided, and challenges Dr. Glassman's opinion and the ALJ's decision because neither restricted Sprano's capacity to do manipulative activities.  The Acting Commissioner moves to affirm, contending that the ALJ properly weighed the conflicting opinions and properly assessed Sprano's functional capacity.

A. Medical Opinions

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(1).[3]  An ALJ is required to consider medical opinions along with all other relevant evidence in a claimant's record.  20 C.F.R. § 404.1527(b).  Medical opinions are

---

[3] Because the regulations implementing the standard for disability under Title II (§ 404.1520 - § 404.1530) and under Title XVI (§ 416.920 - § 416.930) are the same, the court will cite the to Title II regulations.  See Sullivan v. Zebley, 493 U.S. 521, 525, n.3 (1990).

8

evaluated based upon the nature of the medical source's relationship with the claimant, the extent to which the source provides evidence to support the opinion, the extent the opinion is consistent with other evidence in the record, the specialization of the medical source, and other factors including the understanding the source has of the social security system. § 404.1527(c).

In this case, the two opinions at issue are both from consultative medical sources, Dr. Huyck and Dr. Glassman. The ALJ gave great weight to Dr. Glassman's opinion and little weight to Dr. Huyck's opinion. Sprano contends that the ALJ erred in weighting the opinions.

1. Examination

Sprano argues that Dr. Huyck, a specialist in occupational medicine, did a more comprehensive examination than Dr. Glassman. For that reason, Sprano contends, Dr. Huyck's opinion deserves greater weight. Dr. Glassman, a specialist in physiatry, also examined Sprano and provided a functional capacity assessment. Sprano has not shown that Dr. Huyck's opinion was entitled to more weight based on any differences in their specialties or their examinations.

9

2. <u>Evaluation of the Opinions</u>

The ALJ gave great weight to Dr. Glassman's opinion because that opinion was consistent with Sprano's presentation during the examination, during his regular office visits with PA-C Uptegrove, and with an evaluation done by Dr. Gassert. The ALJ gave little weight to Dr. Huyck's opinion because that opinion was not consistent with the record evidence. The ALJ particularly noted Dr. Huyck's findings about Sprano's poor balance and a history of falls, which the ALJ concluded were not supported by Dr. Huyck's own examination or the record.

Sprano contends that the ALJ was wrong that his poor balance and difficulty walking was not documented in his medical records. In support, Sprano cites a physical therapy treatment note from February 24, 2016, where he reported his leg had given out the previous day. The note also listed as "Problems" that Sprano had "Impaired gait" and difficulty with stairs, standing, sitting, and dressing. Sprano also notes other instances where he reported to providers that he had had concern about losing his balance and falling.

The Acting Commissioner acknowledges that the ALJ missed two instances in the record where Sprano reported falling – one to the physical therapist and another to the physician's assistant. Other than Sprano's own reports, however, the record includes no observed problems with balance or falling. Dr.

Huyck did not note any balance problems while Sprano completed the tests in her office, which included walking, climbing stairs without a rail, and standing for thirty minutes. Dr. Glassman also did not observe balance problems.

Despite the lack of medical evidence of balance problems or falling, Dr. Huyck concluded that Sprano would be unable to walk effectively because of poor balance and a history of falls. The record, therefore, supports the ALJ's decision to give little weight to Dr. Huyck's opinion.

Sprano contends that Dr. Glassman's opinion was not supported by the medical record because his history showed that he was functionally limited by back pain to a greater extent than Dr. Glassman found.[4] The Acting Commissioner notes Dr. Glassman's examination results that support his opinion and also notes that Dr. Glassman indicated that Sprano might have been giving exaggerated reactions during the examination. The Acting Commissioner contends that Dr. Glassman's opinion is consistent with the objective findings from Sprano's office visits with PA-C Uptegrove which recorded normal results.

---

[4] To the extent Sprano argues, in his reply, that Dr. Glassman's opinion is deficient because he did not address the test results Dr. Huyck recorded on Sprano's manipulation test, Sprano has not shown that a consultative medical source is required to address every test administered by another medical source. Further, as is explained below, Dr. Huyck did not add manipulative limitations based on that test result.

As is often the case in social security cases, the record here might support a different outcome. It is the ALJ's job, however, to resolve conflicts in the evidence. Applebee v. Berryhill, --- Fed. Appx. ---, 2018 WL 6266310, at *1 (1st Cir. Nov. 30, 2018). The evidence is sufficient to support an ALJ's decision to rely on Dr. Glassman's opinion, even if the record could support a different conclusion, when "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion." Irlanda Ortiz, 955 F.2d at 769 ((internal quotation marks omitted); accord Purdy, 887 F.3d at 13. Sprano has not provided grounds to reverse based on the ALJ's reliance on Dr. Glassman's opinion.

B. Residual Functional Capacity

In his reply, Sprano argues for the first time that the ALJ did not actually rely on Dr. Glassman's opinion to assess Sprano's residual functional capacity and that Dr. Glassman and the ALJ failed to address the manipulative limitations that Dr. Huyck found.[5] Because of those perceived errors in the residual functional capacity assessment, Sprano contends that the

---

[5] Ordinarily, issues or arguments that are first raised in a reply will not be considered. See LR 7.1(e)(1) (providing that reply is restricted "to rebuttal of factual and legal arguments raised in the objection or opposition memorandum"); Fraser Eng'g Co., Inc. v. IPS-Integrated Project Servs., 2018 WL 1525725, n.7 (D.N.H. Mar. 27, 2018). Here, however, the Acting Commissioner responded to Sprano's new arguments in her surreply.

12

vocational expert's opinion about jobs did not provide evidence to support the finding that he was not disabled.  The Acting Commissioner contends that no error occurred.

The residual functional capacity assessment is a finding of the most a claimant can do in a work setting despite his limitations caused by impairments.  20 C.F.R. § 404.1545(a)(1).  An ALJ's assessment is reviewed to determine whether it is based on proper legal standards and is supported by substantial evidence.  Nguyen, 172 F.3d at 35-36.  An ALJ generally cannot interpret medical data in a claimant's record in functional terms.  Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996).  For that reason, an expert's functional capacity assessment, generally in the form of a medical opinion, is necessary to evaluate a claimant's work capacities in light of his impairments.  Id.; see also Swain v. Berryhill, 2018 WL 5342714, at *5 (D.N.H. Oct. 29, 2018).

1.  Hypothetical Question, Residual Functional Capacity

Sprano contends that the hypothetical question to the vocational expert did not convey accurately Sprano's residual functional capacity as found by Dr. Glassman.  Specifically, Sprano sees a discrepancy between Dr. Glassman's findings about his ability to sit, stand, and walk and those limitations in the

hypothetical.[6]  The Acting Commissioner contends that there is no discrepancy.

Dr. Glassman found that Sprano could sit for a period of fifteen minutes at a time for a total of three hours, could stand for a period of twenty minutes for a total of four hours, and could walk for a period of five minutes for a total of one hour.  The ALJ's hypothetical question to the vocational expert is confusing.  Nevertheless, when the question is taken in the context of the discussions between the ALJ and vocational expert and Sprano's attorney and the vocational expert, the record shows that the vocational expert understood that she was asked whether jobs existed for someone who could sit for up to three hours, stand for up to four hours, and walk for up to one hour.  The other limits on the ability to sit and stand identified by Dr. Glassman were addressed with the sit/stand option, which would allow the employee to change position at will.  Therefore, the record does not support Sprano's argument that the vocational expert's opinion was based on an erroneous hypothetical question.

---

[6] Sprano also notes that Dr. Glassman found different weight to be the maximum amount he could lift frequently – twenty pounds in one place and twenty-five pounds in another.  Sprano does not explain, however, what difference that made in his case.

14

## 2. Manipulative Limitations

Sprano also contends that the ALJ's residual functional capacity assessment was erroneous because it did not include manipulative limitations that, he contends, Dr. Huyck found. He argues that manipulative limitations were required based on the results of a test administered by Dr. Huyck. He further argues that because neither Dr. Glassman nor the ALJ explained why manipulative limitations were excluded the residual functional capacity assessment is not properly supported.

As the Acting Commissioner points out, Dr. Huyck found in her residual functional capacity assessment that Sprano "had impairment of standing tolerance, pace, ambulation (55 percent of distance expected for age), and lifting (spinal shift to the right with lifting at 40 pounds)." Admin. Rec. at 317-18. She did not find that Sprano had any manipulative limitations. Dr. Huyck also found that Sprano would have the capacity for work at a sedentary level except for the limitation in his ability to sit for a long time and literacy deficits, but she did not find any limitation in his ability to do manipulative activities. See SSR 85-15, 1985 WL 56857, at *7 ("handling [seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands] are activities required in almost all jobs"). Therefore, the raw test results that Sprano cites do not provide any basis, much less a requirement, for the ALJ to

include a manipulative limitation in the residual functional capacity assessment.

C. Result

The ALJ's sloppiness in this case made the review more difficult than should have been necessary. Nevertheless, because the vocational expert identified jobs that a person with Sprano's limitations could perform, substantial evidence supports the finding that Sprano was not disabled.

## Conclusion

For the foregoing reasons, the claimant's motion to reverse (document no. 10) is denied.

The Acting Commissioner's motion to affirm (document no. 12) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

December 19, 2018

cc: Karen B. Fitzmaurice, Esq.
    Alexandra M. Jackson, Esq.
    Candace H. Lawrence, Esq.